**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**CASE NO:**

DAVID ULERY, individually
and on behalf of all others similarly situated          **CLASS REPRESENTATION**

    Plaintiff,

                                      **JURY TRIAL DEMANDED**

vs.
MORNING FINANCIAL LLC,

    Defendant.

_____/

**CLASS ACTION COMPLAINT**

    Plaintiff, DAVID ULERY (hereinafter "Plaintiff"), brings this class action against MORNING FINANCIAL LLC ("MF') "Defendant") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "TCPA"), and the regulations promulgated thereunder. In support, Plaintiff alleges as follows:

**INTRODUCTION**

    1. Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant in negligently or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the TCPA, thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

    2. The TCPA was designed to prevent unwanted calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. The Federal Communications

1

Commission (FCC) reports that unwanted calls constitute its top consumer complaint. *See* Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Apr. 16, 2021). In the fiscal year 2020, the Federal Trade Commission (FTC) received 293,071 complaints from Florida consumers about unwanted telephone calls. *See* Federal Trade Commission, *Do Not Call Data Book 2020* (Oct. 2020), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year2020/dnc_data_book_2020.pdf (last visited Apr. 16, 2021).

3.  In the course of promoting and selling their services, Defendants and/or their agents placed thousands of nonconsensual automated or prerecorded calls to consumers' telephone numbers nationwide using an automatic telephone dialing system in violation of the TCPA.

4.  Moreover, Plaintiff and Class members' phone numbers were registered with the National Do-Not-Call Registry. The FCC has explicitly stated that the TCPA's prohibitions "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C. § 227(b)(1)(A)(iii).

5.  Plaintiff and each Class Member received unwanted telephone robocalls from Defendants without proper regard to the TCPA or the Do-Not-Call Rules, and in disregard for individual privacy. Plaintiff and Class Members' phone numbers were registered with the National Do-Not-Call Registry.  This lawsuit challenges all calls that were sent by Defendants to Plaintiff and Class Members from approximately September 2018, through the date of preliminary approval of class certification.

6. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."[1] The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded-voice calls to cell phone numbers and failing to institute appropriate do-not-call procedures. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(d).

7. In enacting the TCPA, Congress intended to give consumers a choice as to how companies may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

8. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

---

[1]. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

3

## JURISDICTION AND VENUE

9. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

10. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendant's transmission of the unlawful and unwanted calls to Plaintiff in this District.

11. Plaintiff resides in Colorado Springs, Colorado, where the subject calls were received, within the jurisdiction of this Honorable Court.

12. The Court has personal jurisdiction over Defendant because it conducts business in this state, markets its services within this state, solicits consumers to purchase its products and services in this state, and has availed themselves to the jurisdiction of this state by placing calls to Plaintiff and Class Members in this state.

## PARTIES

13. Plaintiff's domicile is in Colorado Springs, Colorado.

14. Class Members are citizens of the United States, including within the State of Colorado.

15. Defendant, MORNING FINANCIAL LLC is a Florida limited liability company with its principal address located at 1201 SE 2nd CT., #406, Fort Lauderdale, FL 33301. MORNING FINANCIAL LLC lists its registered agent as Registered Agent Solutions, Inc., 155 Office Plaza Dr., Suite A, Tallahassee, FL 32301. Based upon information and belief, all of the individual principals of MORNING FINANCIAL LLC are citizens of Florida.

16. Defendant uses a business model whereby it promotes its debt solution services by spamming callers with unsolicited robo-calls to generate leads, including Plaintiff and Class Members.

17. Defendant spammed Plaintiff's and members of the class without regard to whether it had express written consent to make the calls or whether the recipients were registered to the National Do-Not-Call Registry, in violation of the TCPA.

18. Defendant, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

19. Defendant engages in the telemarketing, promotion, and sale, of debt relief and resolution services to consumers across the country.

20. Defendant, either directly or through authorized lead generators, sales agents, vendors, and/or contractors promotes its services through the use of unlawful telemarketing campaigns.

21. To increase the sales volume and profits of its products and services, Defendant and/or its authorized agents repeatedly called thousands of consumers using a prerecorded and/or artificial voice in violation of the TCPA.

22. Plaintiff knows the calls were prerecorded and/or used an artificial voice because the nature of the voice "script" was clearly a recording, automated, and a distinct artificial voice using artificial intelligence could be heard.

23. The prerecorded robocalls sounded the same and had the same or substantially similar message or "script."

24. The script states Defendant was calling from "the debt forgiveness center," offering a debt forgiveness program to reduce debt up to "55%," that they are a "free referral service," and that this is a "time sensitive program."

25. Plaintiff received at least 2 of these calls, including one on July 27, 2022 and on July 28, 2022.

26. After Plaintiff listened to the script a second time, he was subsequently transferred to a live agent named Mark who briefly explained the program and eventually disclosed that he was calling from Morning Financial. Mark provided Plaintiff the Morning Financial website and Mark's contact information to verify that MF was the identity of the caller.

27. The call on July 27, 2022 was from a spoofed number, 719-552-7644.

28. The call on July 28, 2022 was from the spoofed number, 719-552-1978.

29. Plaintiff received these calls to his cell phone number ending in 7000 that has been on the national Do-Not-Call Registry since 2008.

30. Upon information and belief, the telemarketing robocalls were made using an Automatic Telephone Dialing system ("ATDS").

31. The impersonal and generic nature of the prerecorded and artificial voice that Defendants sent to Plaintiff demonstrates that Defendants used an ATDS to send the subject calls.

32. Through the above unsolicited phone calls, Defendants contacted Plaintiff on Plaintiff's cellular telephone regarding an unsolicited service via an ATDS, as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

33. Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. This system can also be considered an "automated system for the selection or dialing of numbers," as defined by Fla. Stat. §501.059(8)(a).

34. Upon information and belief, this ATDS has the capacity to store numbers and to dial numbers without human intervention.

35. In other words, no human physically dialed each digit of Plaintiff's and Class Members' telephone numbers – the calls were made using equipment with the capacity to dial many phone numbers in a short period of time, without human intervention.

36. Upon information and belief, Defendants used a combination of hardware and software systems which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention.

37. Defendants utilized the ATDS to send the subject phone calls *en masse* to Plaintiff and Class Members using an autodial function regardless of whether these individuals had provided express written consent or had registered their phone numbers on the National Do Not Call Registry.

38. Based upon information and belief, most call recipients were sent more than one call, and Defendants lack an adequate system for preventing autodialed or prerecorded-voice calls to phones for which they do not have consent.

39. The content of the phone calls (selling debt resolution services) made to Plaintiff and the Class Members show that they were for marketing purposes and thus required Plaintiff's prior express written consent.

40. The telephone number Defendants called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

41. These calls were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

42. Plaintiff did not provide Defendants or its agents prior consent to receive these calls to his cellular telephone; therefore, the unsolicited calls violated 47 U.S.C. § 227(b)(1).

43. The calls made to Plaintiff and the Class Members were for the purpose of marketing, advertising, and promoting Defendant's business and services to Plaintiff.

44. Defendant was and is aware or should have known through the exercise of reasonable diligence that it was placing unsolicited calls to Plaintiff and other consumers without their prior consent.

45. Upon information and belief, Defendant has previously received consumer complaints regarding the same unlawful conduct alleged in this Complaint yet Defendant continues to engage in the same unlawful conduct.

46. Since 2020, not including this action, Defendant's business venture partner, Litigation Practice Group, has been sued at least 3 times for TCPA violations.

47. Plaintiff was damaged by Defendants' calls. In addition to using Plaintiff's cellular data, phone storage, and battery life, his privacy was wrongfully invaded, his seclusion was intruded upon, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted, harassing, time consuming, and nuisance phone calls, forcing his to divert attention away from his personal time and homelife, and causing disruption to his work, sleep, and other activities. Not only did the receipt of the phone calls distract and take time away from Plaintiff's personal and professional activities, but Plaintiff was also forced to spend

8

considerable time answering the calls themselves and investigating the source of the calls. *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact".... "[A] small injury… is enough for standing purposes");*See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls)

48. Plaintiff wasted time investigating the source of the company responsible for the unwanted, illegal and unauthorized calls to Plaintiff. But for Plaintiff's efforts, Defendant's identity would continue to be concealed.

49. Plaintiff had no relationship with Defendants prior to these illegal phone calls and had his number has been registered to the National Do Not Call Registry since 2008.

## LIABILITY FOR CALLS PLACED BY THIRD PARTIES

50. To the extent Defendant outsourced its robocalling, it is still liable for calls that violate the TCPA.

51. Defendant is liable for third-parties' actions if it took steps to cause the calls to be made, or if the calls were made pursuant to Defendant's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

## CLASS REPRESENTATION ALLEGATIONS

52. Plaintiff brings this class action under Rule 23(a),(b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and of a similarly situated "Class" or "Class Members" defined as:

> **Do Not Call Registry Class: All people in the United States who from four years prior to the filing of this action (1) were called by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's**

9

> products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.
>
> **Robocall Class: All persons in the United States who, within the four (4) years prior to the filing of the original Complaint received a call from Defendant or anyone on Defendant's behalf, to said person's telephone number, advertising Defendant's products or services, using an artificial or prerecorded voice or similar dialing system used to call Plaintiff, without the recipients' prior express written consent, in violation of the TCPA**

53. This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable through Defendant's call records. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

54. **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized SPAM pre-recorded and/or artificial voice scripts calls to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

55. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendants' records, including, but not limited to Defendant's call logs, vendor records and marketing records.

56. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

57. **The Existence and Predominance of Common Questions of Fact and Law**: Class-wide adjudication of Plaintiff's claims is appropriate to prevent inconsistent or varying adjudications concerning individual members of the class, which would establish incompatible standards of conduct for Defendant. Additionally, adjudications concerning individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class who are not named parties to the case, or substantially impair or impede the ability of other members of the class who are not parties to the adjudication to protect their interest.

58. **The Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

   a. Whether Plaintiff and Class Members registered a phone number on the National Do Not Call Registry;

   b. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents made phone calls to a Class member using an automatic telephone dialing system;

11

c. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents made phone calls to a Class member using a pre-recorded message or artificial voice;

d. Whether, during the class period Defendant or its agents called (other than a phone call made for emergency purposes or made with the prior consent of the called party) to a Class member using any automatic dialing system to any cellular telephone number;

e. How Defendant obtained the numbers of Plaintiff and Class Members;

f. Whether Plaintiff and Class Members registered a phone number on the National Do Not Call Registry;

g. Whether Defendant, either directly or through persons acting on its behalf, willfully or knowingly placed the phone calls;

h. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

i. Whether Defendant had prior express consent under the TCPA to call the phone numbers of Plaintiff Class Members;

j. Whether Defendant instituted procedures for maintaining a list of persons who request not to receive telemarketing calls that met the standards set forth in 47 C.F.R. § 64.1200(d);

k. Whether Defendant engaged in telemarketing content when it made the calls which are the subject of this lawsuit;

l. Whether the calls made to Plaintiff and Class Members violate the TCPA and its regulations;

  m. Whether Defendant willfully or knowingly violated the TCPA or the rules prescribed under it;

  n. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

  o. Whether Plaintiff and the Class are entitled to any other relief.

59. One or more questions or issues of law and/or fact regarding Defendants' liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification.

60. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

61. Plaintiff and members of the Class each received at least one telephonic sales and/or telemarketing call, advertising Defendants' services without prior express consent, which Defendants sent or caused to be sent to Plaintiff and the members of the Class.

62. Plaintiff and members of the Do-Not-Call-Registry Class each received more than one phone call within a 12-month time period, which Defendant placed or caused to be placed to Plaintiff and the members of the Class

63. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in litigation in TCPA litigation and class action litigation.

64. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendants by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

65. **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing violations of the TCPA, and to order Defendants to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted calls.

14

# COUNT I
# VIOLATION OF THE TCPA
# 47 U.S.C. § 227
# (Against MF on Behalf of Plaintiff and the
# Do Not Call Registry Class)

66. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 65 of this Complaint as though fully stated herein.

67. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

68. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

69. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

70. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

---

[2]. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

71. MF violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

72. MF violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of MF in violation of 47 C.F.R. § 64.1200, as described above.

73. As a result of MF's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

74. To the extent MF's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against MF, as set forth in the Prayer for Relief below.

## COUNT II
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(b)
## (Against MF on behalf of Plaintiff and the Robocall Class)

102. Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 65 above as though fully stated herein.

103. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

automatic telephone dialing system. . .to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

104. Automatic telephone dialing system refers to "equipment which has the capacity---(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

105. MF – or third parties directed or authorized by MF – used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

106. MF – or third parties directed by MF – used an artificial or prerecorded voice to deliver messages to Plaintiff and other Class Members without prior consent.

107. These calls were made without regard to whether or not MF had first obtained express permission from the called party to make such calls. In fact, MF did not have prior express consent to call the cellular phones of Plaintiff and the other members of the putative Class when its calls were made.

108. MF has, therefore, violated Sec. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

109. Furthermore, it is a violation of the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior consent of the called party, unless the call is initiated for emergency purposes. . . ." 47 U.S.C. 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3).

110. The foregoing acts and omissions of MF constitutes numerous and multiple

17

violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

111. As a result of MF's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

112. At all relevant times, MF knew or should have known that its conduct as alleged herein violated the TCPA.

113. MF knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

114. Because MF knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed pre-recorded calls, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3)(C) of the TCPA.

115. Likewise, since MF knew or should have known that Plaintiff and Class Members did not give prior express consent to receive calls using an ATDS, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3) of the TCPA.

116. As a result of MF knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

117. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class Members relief against Defendant, MF, individually, and jointly and severally, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendants for:

a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b. Statutory damages of $500 per call in violation of the TCPA;

c. Willful damages at $1,500 per call in violation of the TCPA

d. Statutory damages of $500 per call in violation of the DNC provisions of the TCPA;

e. Willful damages at $1,500 per call in violation of the DNC provisions of the TCPA;

f. A declaration that Defendants' practices described herein violate the TCPA;

g. An injunction prohibiting Defendant from placing telemarketing calls to individuals registered on the Do-Not-Call Registry;

h. Reasonable attorney's fees and costs; and

i. Such further and other relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to, and demands, a trial by jury.

Dated: October 06, 2022                     /s/ Joshua H. Eggnatz
                                            Joshua H. Eggnatz, Esq.
                                            Fla. Bar. No.: 0067926
                                            Michael J. Pascucci, Esq.
                                            Fla. Bar. No.: 83397
                                            Steven N. Saul, Esq.
                                            Fla. Bar No.: 1002827

**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
Fax: (954) 889-5913
MPascucci@JusticeEarned.com
JEggnatz@JusticeEarned.com
SSaul@JusticeEarned.com
SGizzie@JusticeEarned.com

Jordan Richards, Esq.
Fla. Bar No. 108372
**JORDAN RICHARDS, PLLC**
1800 Southeast 10th Ave., Suite 205
Fort Lauderdale, FL 33316
Tel: (954) 871-0050
Jordan@jordanrichardspllc.com

Seth M. Lehrman, Esq.
*(To be Admitted Pro Hac Vice)*
Fla. Bar No.: 132896
**EDWARDS POTTINGER LLC**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Tel: (954) 524-2820
Fax: (954) 524-2822
seth@epllc.com

*Attorneys for Plaintiff and Class*